HEARD APRIL TERM, 1876.

STATE, *ex rel.* SCOTT, *vs.* SMITH.

The only proper parties to *mandamus* are the relator or relators claiming to be interested in the performance of the duty and the party upon whom the duty is imposed by law, and it is inconsistent with the nature of the remedy to bring in as defendants parties only collaterally or incidentally interested in the subject of the controversy.

BEFORE MOSES, J., AT NEWBERRY, AUGUST, 1875.

This was a petition for a writ of *mandamus.* The case is stated in the following opinion of His Honor the Circuit Judge:

MOSES, J. The relator, Harry B. Scott, as School Commissioner for the County of Newberry, exhibited his petition in this Court on the 8th day of April, 1875, verified by his oath, setting forth as follows:

That he is the School Commissioner for Newberry County.

That Jesse C. Smith, as County Treasurer for said County, has collected by poll tax for educational purposes for the present fiscal year twenty-one hundred and forty-eight (2,148) dollars, besides a surplus arising from the fund likewise raised by taxation for the present year, for the support of widows and orphans of persons killed for their political opinions, not yet exactly ascertained, but considerable in amount.

That both these funds should be applied exclusively to the payment of debts for educational purposes for the present fiscal year, in opposition to the claims of those creditors for educational purposes anterior to the present fiscal year, who insist that both these funds should be exclusively applied to the satisfaction of their debts.

The relator prayed for a writ of *mandamus* to require Jesse C. Smith, as County Treasurer for Newberry County, to pay the funds in his hands for educational purposes, as set forth in the petition, exclusively to debts contracted for such purposes for the present fiscal year.

Thereupon an order was granted, requiring Jesse C. Smith, as County Treasurer, to shew cause, at a day therein fixed, why *mandamus* should not issue in accordance with the prayer of the petition; also enjoining him from paying out any of the said funds until the further order of this Court.

It was further ordered that the relator, looking to a full hearing in the premises, should have leave to make one or more of the holders of past due school claims, with Jesse C. Smith, parties defendant by service of a copy of the petition and order.

Such service was made upon Jesse C. Smith, County Treasurer, and upon Cynthia Mower and Tabitha E. Andrews, claiming to hold past due school claims, and therefore parties interested in this suit and representatives of the class to which they belong.

Jesse C. Smith put in his formal answer, submitting to such order as the Court might pass upon the hearing; but the other defendants claim that the fund now in controversy should be applied exclusively to school claims now past due, and not in any part to the school claims for the present fiscal year, and they deny the right of the relator to institute the present proceedings.

These are the points raised for adjudication, which the Court will now briefly consider.

As to the status of the relator in this suit and his right to institute the same, this Court has no doubt. As a taxpayer it is his right, and as School Commissioner his official duty, to look to the proper application of all moneys raised by taxation for educational purposes.

As to the application of the fund in controversy, the defendants rely upon the Act of the General Assembly, (No. 465, p. 565,) approved March 3, 1874, which in its terms is clear and explicit, and if standing alone would be conclusive; but by the relator reference is made to a later Act of the General Assembly, (No. 604, p. 692,) approved March 17, 1874, Sections 2 and 3, wherein, under most severe penalties, public officers (State or County) are forbidden to divert or appropriate the funds arising from any tax levied and collected for any one fiscal year to the payment of any indebtedness contracted or incurred for any previous fiscal year.

The relator also cited Sections 2 and 3 of Article IX of the Constitution, in the light of which these conflicting Acts have to be construed.

The Court is of opinion that the Act (No. 604) approved March 17, 1874, renders the Act (No. 465) approved March 3, 1874, inoperative, and that under the authority of the Act No. 604 and the second and third Sections of Article IX of the Constitution the relator's position must be sustained.

Since the hearing the Acts of the last session of the Legislature have been published, and the attention of the Court has been directed to one of the Acts of that session, to wit, No. 762.

The Court has heard no argument on the construction and applicability of that Act to the present controversy, but is, upon careful consideration, of the opinion that the Legislature never intended that Act to apply to the funds for educational purposes, and that by proper construction it cannot be so applied.

It is therefore ordered and adjudged that the proceeds of the poll tax, as set forth in the relator's petition, be held exclusively liable for educational purposes for the present fiscal year, except so much thereof as may be required to meet the expenses of the relator incurred herein on behalf of said fund, including a proper counsel fee to Messrs. Baxter & Johnstone, his attorneys, whereof reference is made to ·H. C. Moses, Esquire, Clerk of the Court, to inquire and report at the earliest practicable day.

It is also ordered and adjudged that the net amount of said fund, when ascertained, be apportioned by the School Commissioner for the County of Newberry to the different school districts, and that the same be paid out by the County Treasurer for Newberry County, upon the "orders of the Board of School Trustees," countersigned by the School Commissioner, except the claims of Trustees for enumerating school children, which are to be paid on the order of the School Commissioner.

It it is further ordered and adjudged that the surplus of the funds raised for the support of the widows and orphans of persons killed for their political opinions be disposed of in like manner, when the same is exactly ascertained.

William M. Brooks and Cynthia Mower appealed, and moved this Court for a reversal of the same and a dismissal of the petition herein.

*Jones, Jones & Mower*, for appellants:

This case came up on a petition filed by Harry B. Scott, as School Commissioner for Newberry County, for a *mandamus* against Jesse C. Smith, as County Treasurer, to compel him to pay over to the said H. B. Scott, as School Commissioner, the funds raised the present fiscal year for educational purposes by poll tax and the surplus remaining from the funds raised for the support of the widows

and orphans of persons killed on account of political opinions, to be applied by him to the payments of debts contracted the present fiscal year for educational purposes.

The appellants, holding warrants for school claims past due 1st of November, 1873, issued long since by the School Trustees and countersigned by M. M. Long, the then School Commissioner, insist that said fund shall be pro-rated among the school claims past due 1st of November, 1873, as directed by the Act of the Legislature passed 3d of March, 1874, and that the relator has no right to institute this suit.

I. The relator, H. B. Scott, has no legal right to institute this suit:

First. Because he has no legal interest in the matter.

To be entitled to the writ of *mandamus* the relator must show that the respondent is bound to the performance of some certain specific duty of a ministerial character imposed by law, in the performance of which the relator has a legal interest.—*Morton, Bliss & Co.* vs. *Comptroller General,* 4 Rich., (N. S.,) 430.

It is essential to the granting of the writ as against public officers, that the relator on whose application the relief is sought should show some personal interest whose protection he seeks to enforce; and it may be stated, as a general principle, that *mandamus* will not lie to compel action upon the part of public officers when it is apparent that the relator has no direct interest in the action sought to be coerced and that no benefit can accrue to him from its performance.—High on Ex. Leg. Rem., § 33.

The *mandamus* should be applied for by the party beneficially interested.—*Ex parte* Flemming, 2 Wallace, 759.

Second. Because warrants on the said Treasurer have long since been legally issued by the School Trustees and countersigned by the relator's predecessor for the payment of the claims of the appellants, and the matter is now beyond the control of the relator; his duties are *functus officio.*

When the writ is sought upon the relation of the Board of Education of a city to compel the City Treasurer to pay certain orders, drawn by the Board in favor of a contractor for the erection of school buildings, the Board having parted with their interest in the funds, by drawing and delivering the orders, are not proper

parties to institute proceedings to compel payment when the real party in interest sees fit to acquiesce in the refusal.—High on Ex. Leg. Rem., § 434; *State* vs. *Haben*, 22 Wis., 660.

Third. Because the School Trustees for the different school districts, upon the orders of whose Board, countersigned by the relator only, can school funds be paid by the Treasurer, were not made parties with the relator. To permit the School Commissioner to act alone in this matter is to declare his right to control the school fund without the consent of the School Trustees, in violation of the Act of 1873, No. 285.

Fourth. Because the relator, as School Commissioner, had no power or right over the fund in question, except to countersign such warrants as the School Trustees might issue and leave their collection to the parties in interest.

II. The poll tax and surplus of taxes raised for the support of widows and orphans of those killed for political opinions should be applied *pro rata* to the payment of school claims past due 1st November, 1873.—Act 3d March, 1874, No. 465. See Sections 3, 7, 8, of Act 1874, No. 570.

The third Section of said last Act directs a levy of two mills to be applied to the support and maintenance of public schools for the fiscal year commencing November 1st, 1874. The seventh Section directs a levy of $1\frac{4}{5}$ of a mill to pay certain past due claims. The eighth Section authorizes a levy of three mills to be exclusively applied to County purposes for the fiscal year commencing 1st November, 1874, and this fund is directed to be kept separate and apart from all other funds. This Section also authorizes certain Counties to levy a tax to pay past indebtedness.

These Sections, indeed the whole scope of the legislation on this subject, show that the Legislature had two objects in view—one was to provide for the current expenses of each year, and the other was to provide for the payment of past due claims, each by a separate levy.

The Act of 17th March, 1874, No. 604, could not therefore have been intended to annul the Acts last mentioned, which were only passed three and fourteen days before it.

III. The Act of 17th March, 1874, does not repeal the Act of 3d March, 1874, nor is it inconsistent with it.

First. It is not repealed by express words, nor is there any general repealing clause in the Act of 17th March, 1874.

Second. It is not repealed by implication as being inconsistent with the Act of 17th March, 1874, which only relates, as its wording clearly shows, to funds collected for any fical year,—that is, to pay the expenses of that fiscal year,—and not to funds collected in one fiscal year and directed to be applied to the payment of past due indebtedness. The two Acts are perfectly consistent.

Repeals by implication are not favored in law, and are never allowed but in cases where inconsistency and repugnancy are plain and unavoidable.— *Wallace* vs. *Bassett,* 41 Barb., 92; Sedgwick on Con. Law, 127; Dwarris on Stat. and Con., 156; *Cool* vs. *Smith,* 1 Black, 459; *Wood* vs. *U. S.,* 16 Peters, 342; 10 Barb. R., 448; *Hartford* vs. *U. S.,* 8 Cranch, 1, 9; *Brown* vs. *County Coms.,* 21 Penn., 37; *Street* vs. *Commonwealth,* 6 Watts & Serj., 299; *Brown* vs. *Sease,* 5 Hill, 221; *Williams* vs. *Potter,* 2 Barb., 316; *McCool* vs. *Smith,* 1 Black U. S. R., 470.

The question resolves itself into the inquiry: What was the intention of the Legislature? Did it mean to repeal? — *U. S.* vs. *Cased Hair Pencils,* 1 Payne, 400.

Sedgwick says at page 124 that when the intention of the Legislature was apparent that the subsequent Act should not have such an operation, then, even though the words of such statute, taken strictly and grammatically, would repeal the former Act, the Courts of law, judging for the benefit of the subject, have held that they ought not to receive such a construction.

Third. The reason of this rule of construction is more strongly applicable to two Acts passed at the same session, as these two Acts were. The Legislature, by the very act of publishing these Acts, which the relator contends have been repealed, after the passage of the Act of 17th March, 1874, and in the same volume with it, declares its construction that they are not inconsistent and shall stand.

The construction contended for by the relator would repeal the following previous Acts passed at the same session : 15 Stat., 657, § 3; 658, §§ 7, 8; 659, § 8; 614, § 4; 515, 516, §§ 3, 8.

Fourth. If the construction contended for by the relator is correct, the Act of March 17, 1874, is clearly unconstitutional, because it takes away from the Legislature the power of raising money and having it applied to the payment of past indebtedness, which is expressly required of the Legislature by Section 3 of Article IX of the Constitution.

The expenses incurred by the relator in this cause, including his counsel fee to his attorneys, were improperly ordered by the decree of His Honor M. Moses to be paid out of the fund, because the institution of these proceedings by the relator was officious and without authority of law or of the parties interested in said fund, and has worked great injustice to them by tying up their funds by injunction.

*Baxter & Johnstone,* contra :

1. The law, both in its letter and spirit, sustains the decision of the Circuit Court.—Sections 2 and 3, Article XIX, of the Constitution ; Act of the General Assembly, No. 604, page 692, approved March 17, 1874.

2. That the Act above cited repeals the conflicting Act, No. 465, page 565, approved March 3, 1874.

3. Deficiencies cannot be provided for, according to the provisions of the Constitution above cited, except by an additional tax levy, and not by the diversion of an annual tax from the expenses of the year for which, by law, it was levied.

May 8, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The original application in the Circuit Court was for a *mandamus* to compel the defendant, the Treasurer of Newberry County, to pay certain moneys to the relator, the School Commissioner, alleged to be in the County treasury, applicable to disbursement by the relator as School Commissioner. The object of the *mandamus* was to obtain a judicial construction of certain Acts of the Legislature, on which depended a question as to the amount of money in the County treasury applicable to certain specific purposes.

It appears that there was a conflict between two classes of claimants against the County treasury, involving the disputed construction of the statutes. An order was made on the petition for *mandamus* quite inconsistent with the nature of that remedy. It was ordered "that the relator, looking to a full hearing in the premises, should have leave to make one or more of the holders of past due school claims, with Jesse C. Smith, parties defendant by service of a copy of the petition and order." By the same order the County Treasurer was enjoined from paying out any of the said funds until the further order of the Court.

The appellants were brought in, as parties defendants with the County Treasurer, as holders of claims of a certain class interested in the question. A hearing took place, which resulted in an order which has none of the characteristics of a peremptory writ of *mandamus*, but in form and substance is assimilated to a decree in equity in relation to the disposition of assets pending in that Court.

The County Treasurer did not appeal from the order, although, by consenting to be bound by it, it was possible that the obligations it imposed upon him might be inconsistent with his official duty as prescribed by law, and thus become prejudicial to him. We cannot supply the want of an appeal on his part so as to pass upon all the features of the order. So far as the appellants are concerned, we are authorized to examine its propriety.

The appellants are entitled to object to all interlocutory orders entering into the final order, and this would include the order making them parties defendant.

It was inconsistent with the nature of the remedy by *mandamus* to bring in parties only collaterally or incidentally interested in the subject of the controversy, or at most directly interested in the question involved alone. The only proper parties to *mandamus* are the relator, or relators, claiming to be interested in the performance of some specific duty imposed by law, and which, after demand, has been wrongfully refused and the party by law bound to perform such act of duty. The only question that the Court could properly have considered was the right presented by the relator in behalf of himself and the legal consequences of the refusal of such right.

An attempt to make an order in the nature of a general adjudication between claimants of different classes having conflicting interests, and calling in for that purpose representatives of the respective classes, was an entire departure from the practice in cases of *mandamus*, and in fact to employ a petition for *mandamus* as a substitute for a complaint in the nature of a bill in equity. We have already held, in *Jacob* vs. *Winnsboro National Bank*, that such an equitable jurisdiction cannot be asserted for the purpose of distributing funds in a public treasury among the respective parties entitled to them by law.

It was, therefore, improper that the appellants should be made parties, and the petition and order must be set aside as affecting their interests.

We have already pointed out, in the case just referred to, the proper remedy, where parties seek to obtain payments from public officers specifically authorized by law, and it is unnecessary to recur at this time to that subject.

The motion of the appellants must be granted.

*Moses*, C. J., and *Wright*, A. J., concurred.